# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

FREDERICK WOODARD,

        Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 3:08-cv-395

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on March 14, 2005, alleging disability from October 29, 2004, due to learning disabilities, neurological problems and cerebral palsy. *See* Tr. 203-05, 366-69; 70, 385. Plaintiff's applications were denied initially and on reconsideration. *See* Tr. 158-59, 175-79, 370-77. Two hearings were held before Administrative Law Judge Daniel R. Shell, (Tr. 378-95, 396-405), who determined that Plaintiff is not disabled. (Tr. 16-24). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that he met the insured status requirements of the Act through September 30, 2007. (Tr. 18, ¶ 1). Judge Shell also found that Plaintiff has severe borderline intellectual functioning and mild ataxia and an impairment of conjugate gaze due to cerebral palsy, but that he does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, ¶ 3, Tr. 20, ¶ 4. Judge Shell found further that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id.,* ¶ 5. Judge Shell then used section 203.29 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 23, ¶ 10). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 24, ¶ 11).

In 1977, at the chronological age of 13-5, Plaintiff scored a mental age of 9-0 on the Stanford-Binet Intelligence Scale and his registered quotient was 69, placing him in the third percentile. (Tr. 121-23).

4

Plaintiff underwent WAIS-R (Wechsler Adult Intelligence Scale – Revised) testing in June, 1983, when he was 19 years old at which time the evaluator reported that Plaintiff had a verbal IQ of 76, a performance IQ of 62, and a full scale IQ of 68, placing him in the developmental handicap range of intelligence. (Tr. 246-47). The evaluator also reported that Plaintiff had weaknesses in non-verbal reasoning, visual identification skills, simple assembly skills, and short-term memory, that his strengths were in his slightly below average general information and vocabulary development, and that his auditory-verbal processing of information was generally higher than perceptual-motor skills. *Id.* The evaluator noted that other testing showed Plaintiff's word recognition skills were at the 7.4 grade level in reading, his reading comprehension score was at a 3.5 grade level, his spelling skills were at a grade level of 5.7, his arithmetic grade level was 3.6, and that he had adaptive behavior deficits in self-direction and pre-vocational skills. *Id.*

A work evaluation report was also prepared in 1983, when Plaintiff was 19 years old at which time the evaluator reported that Plaintiff worked very slowly on his tasks and that because of that factor, he was exposed to only limited work samples. (Tr. 248-50). The evaluator also reported that Plaintiff had moderately severe impairments in space/form perception with dexterity and coordination falling in the moderate impairment range and that his gross motor coordination and size discrimination seemed to be mildly impaired. *Id.*

Examining psychologist Dr. Gibeau reported in, May, 2003, that Plaintiff's affect was appropriate but a little flattened and blunted, his mood was pessimistic with periods of depression, and that he was alert with periods of lethargy and confusion. (Tr. 126-33). Dr. Gibeau also reported that Plaintiff's attention span and concentration were erratic but adequate for the tasks presented, his thought processes were slowed, his associations were logical, relevant and goal-

directed for simple tasks, and that as problem complexity increased his performance declined rapidly. *Id.* Dr. Gibeau noted that Plaintiff's fund of information was below average, his estimated level of intelligence was in the borderline range, he was slow in recall, his reasoning skills were concrete, he had partial insight, his judgment was okay, and that his eye-hand coordination and psychomotor speed were significantly below average. *Id.* Dr. Gibeau also noted that Plaintiff's verbal IQ was 82, his performance IQ was 62, and his full scale IQ was 70, placing him in the borderline range of intelligence. *Id.* Dr. Gibeau identified Plaintiff's diagnoses as an anxiety disorder, dependent personality disorder, borderline intellectual functioning, and a learning disorder, not otherwise specified. *Id.* Dr. Gibeau opined that overall, Plaintiff's performance was indicative of very poor performance skills, poor computational skills, poor attention/concentration, poor recent memory, poor attention to detail, poor visual analysis skills, and poor sequential reasoning skills, and that Plaintiff would take longer than average to learn and retain basic job duties and responsibilities. *Id.* Dr. Gibeau also opined that Plaintiff would have problems fully understanding directions, could not function independently, would be able to relate to fellow employees but would have problems in keeping up with their pace, and that he could focus on only one task at a time. *Id.* Dr. Gibeau assigned Plaintiff a GAF of 58. *Id.* Dr. Gibeau identified Plaintiff's diagnoses as anxiety disorder, dependent personality disorder, borderline intellectual functioning, and learning disorder NOS, he assigned Plaintiff a GAF of 58. *Id.*

Plaintiff first consulted with family physician Dr. Farley in June 2003, at which time Dr. Farley noted that Plaintiff's eye movements were jerky, that he was unable to follow finger movements exactly, and that his speech was slightly slurred. (Tr. 279-80). Dr. Farley noted that Plaintiff complained of a lack of eye hand coordination that began during childhood . *Id.* Dr. Farley

6

identified Plaintiff's diagnosis as lack of coordination, new. *Id.*

In October, 2003, Plaintiff consulted with neurologist Dr. Sullivan who noted that Plaintiff had reported that he had "slow reactions" all of his life. (Tr. 154; *see also,* Tr. 292). In May, 2004, Dr. Sullivan diagnosed a mild cerebral palsy with a developmental delay. (Tr. 152; *see also,* Tr. 288). On March 16, 2005, Dr. Sullivan opined Plaintiff was disabled due to mild ataxia, cognitive impairments, and cerebral palsy. (Tr. 285-86).

An MRI of Plaintiff's brain performed on May 27, 2004, revealed sinus inflammatory change and no intracranial abnormality. (Tr. 150-51; *see also,* Tr. 262-63).

In May, 2006, Dr. Farley reported that Plaintiff was moderately limited in understanding, remembering, and carrying out very short and simple instructions, moderately limited in performing activities within a schedule, markedly limited in sustaining a routine without special supervision and working near others without being distracted by them, extremely limited in maintaining attention and concentration for extended periods of time, and extremely limited in completing a normal work day. (Tr. 344-45). Dr. Farley also reported that Plaintiff followed simple commands, was easily distracted, had an unsteady gait, and that his pupils were unable to follow all fields of gaze. *Id.* Dr. Farley noted that Plaintiff had problems with coordination and had learning disabilities. (Tr. 341-42). Dr. Farley also noted that Plaintiff could lift up to fifty pounds, but was unable to move at a rapid pace and that although Plaintiff was capable of lifting, standing, sitting, and bending, his mental capacity was below normal, he did not have the ability to make quick decisions, and that he was unable to work with any rapid pace. *Id.* Dr. Farley opined that Plaintiff required work that was very task oriented and specific due to his mental status. *Id.*

Examining physician Dr. Smith reported on August 22, 2007, that Plaintiff had

difficulty with conjugate gaze to the left and right, that although he could carry out conjugate gaze, he could not hold it well, he could not track small objects rapidly with either eye, he had a normal walk, and that he could heel to toe walk fairly well but that he had problems standing with one foot in front of the other. (Tr. 353-65). Dr. Smith also essentially reported that the remainder of Plaintiff's physical examination was normal. *Id.* Dr. Smith noted that Plaintiff had an impairment with respect to visual tracking and balance. *Id.* Dr. Smith identified Plaintiff's diagnoses as impairment of conjunctive gaze and mild ataxia due to cerebral palsy. *Id.* Dr. Smith opined that Plaintiff could continuously lift/carry up to fifty pounds; sit for eight hours, stand for eight hours, and walk for two hours in an eight-hour day, reach, handle, finger, feel, and push/pull, could occasionally operate foot controls, could never balance, could occasionally climb stairs and ramps, and that he could not follow moving objects in a normal fashion. *Id.* Dr. Smith also opined that Plaintiff could never work at unprotected heights or around moving machinery, and that he could not walk a block on rough or uneven surfaces. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by failing to find that he meets or equals Listing 12.05C and by failing to find any limitations as to his pace. (Doc. 8).

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that

8

claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

Listing 12.05 reads in part:

> *Mental Retardation and Autism:* Mental retardation refers to a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)....
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
> ...

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria...." *Foster v. Halter,* 279 F.3d 348 (6th Cir. 2001) (citations omitted)(emphasis in original).

While it is true that the record contains apparently valid IQ scores which arguably satisfy the requirement of Listing 12.05C, none of the mental health experts of record diagnosed Plaintiff with mental retardation. Indeed, Dr. Gibeau, the only mental health expert who examined Plaintiff, opined that his diagnoses include borderline intelligence and not mental retardation. Further, the evaluator who performed the intelligence testing when Plaintiff was 19 years of age reported that Plaintiff was in the developmental handicap range of intelligence.

In addition to failing to satisfy the diagnostic description in the introductory

paragraph of Listing 12.05, the record contains additional evidence which supports the Commissioner's decision that Plaintiff is not mentally retarded. Specifically, Plaintiff has reported that he graduated from high school where he attended some regular and vocational classes and earned B's and C's, prepared simple meals, drove, shopped, worked on his computer, read, visited others, attended sporting events, attended church activities, performed minor repairs on cars, and bowled. (Tr. 127; 218-20; 351-53). Further, the record reveals that Plaintiff has worked at various jobs including a stock clerk and a material handler which the VE identified at semiskilled work. (Tr. 236; 400). Under these circumstances, the Commissioner did not err by failing to find that Plaintiff does not satisfy Listing 12.05C or by finding that he does not have more than mild restrictions in activities of daily living and social functioning.

Plaintiff argues next that the Commissioner erred by failing to find that he has limitations in his ability with respect to pace. Plaintiff's position is that he is unable to work fast enough to meet employers' standards. Essentially, Plaintiff challenges the VE's testimony in that the hypothetical question which Judge Shell presented to the VE did not include all of his limitations.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational

expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

As noted above, a work evaluation report was prepared in 1983 when Plaintiff was 19 years old at which time the evaluator reported that Plaintiff worked very slowly on his tasks. In addition, Dr. Gibeau noted that Plaintiff would take longer than average to learn and retain basic job duties and responsibilities, that his eye-hand coordination and psychomotor speed was significantly below average, that he would have problems in keeping up with coworkers' pace, and that he could focus on only one task at a time. Further, Dr. Farley identified Plaintiff's diagnosis as lack of coordination*,* noted that he required work that was very task oriented and specific due to his mental status, that his eye movements were jerky, and that he was unable to follow finger movements exactly. Finally, Dr. Smith noted that Plaintiff could not follow moving objects in a normal fashion and that he had an impairment with respect to visual tracking and balance. Although there is abundant evidence in the record that Plaintiff works very slowly at tasks and that he has difficulty with eye-hand coordination, Judge Shell failed to include those limitations in his hypothetical question to the VE. *See,* Tr. 401.

Under these facts, the Commissioner erred by relying on the VE's testimony to find that Plaintiff is not disabled. Therefore, the Commissioner's decision is not supported by substantial evidence on the record as a whole and should be reversed.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or

without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that not all of the factual issues have been resolved. Specifically, the Court notes that there is a question of whether, in spite of Plaintiff's impairments and limitations which result therefrom, there is a significant number of jobs in the economy which he is capable of performing.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is further recommended that this matter be remanded for additional administrative proceedings.

September 9, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).